## Horning, et al. v. Fiscal Court of Caldwell County, et al.

(Decided February 17, 1920.

### Appeal from Caldwell Circuit Court.

1. Elections—Pleadings—Failure to State Cause of Action.—A pleading which alleges an irregularity in an order for a registration of voters, in a city of the fourth class, for an election, held in the county, which does not state facts which show that the irregularity in any way affected the result of the election, does not state a cause of action, in an action to declare an election invalid.

2. Elections—Special Election—How Ordered.—The portion of section 4307 Kentucky Statutes, which provides that a special election held under that section, shall be ordered to be held "upon some day named in the petition," is not mandatory, but a provision for orderly procedure, and is directory, and the failure of the county court to order the election held "upon some day named in the petition," will not invalidate the election, if it is ordered to be held upon a day otherwise within the limits prescribed by the statute, and is otherwise regularly and legally held.

3. Trial—Issue.—The issue intended by section 367, sub-section 5, of the Civil Code, is an issue of fact and not of law and where the issue is one of law, and in the absence of an issue of fact, the section has no application.

4. Appeal and Error—Reversal of Judgment.—As required by section 756, Civil Code, a judgment will not be reversed on account of

error, which does not substantially prejudice the rights of the complaining party.

R. W. LISANBY for appellants.

J. C. GATES, J. E. BAKER and ALBERT MORSE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

On the 27th day of September, 1919, a special election was held at the various polling places, in Caldwell county, for the purpose of taking the sense of the legal voters of the county, upon the question, whether or not the fiscal court, should have the power to issue and sell the bonds of the county, to the amount of $300,000.00, for the purpose of building, constructing and reconstructing public roads and bridges, in the county as provided by section 4307, Kentucky Statutes. The election resulted in a majority of the persons, who voted at the election casting their votes, in favor of issuing the bonds. The appellants instituted this action to enjoin the county, and the fiscal court thereof, from issuing or selling the bonds. Upon a hearing, the circuit court, adjudged, that the petition of appellants, and, also, the petition of M. R. Kevil, an intervening petitioner, be dismissed, and from this judgment, the appellants have appealed. The grounds of reversal relied upon, are, that the court erred, in the following particulars:

(1) In sustaining the defendants' demurrer to the second paragraph of the petition.

(2) In overruling the plaintiffs' demurrer to the second paragraph of the answer.

(3) In overruling exceptions to the deposition of the judge of the county court.

(4) In adjudging, that the advertisement of the election made by the sheriff, was sufficient to uphold the validity of the election

(5) In permitting the petition of the intervening plaintiff to be filed.

(6) In overruling the plaintiffs' motion to file an amended petition.

(7) In ordering the submission of the action for trial and judgment and rendering final judgment therein before it stood for trial, in accordance with the provisions of the Civil Code. These objections to the soundness of the judgment, will be considered, in their order.

(a)   The second paragraph of the petition, to which the trial court sustained a general demurrer, and which the plaintiffs, who are appellants, here, did not offer to amend, set forth, as one of their causes of action, and one of the reasons, why the election was invalid, that the county of Caldwell, contained the city of Princeton, a city of the fourth class, wherein persons to qualify themselves to vote, are required to register for that purpose, preceding the election, and that the county judge, when the order was made for the election to be held for the purpose of authorizing the fiscal court to issue and sell the bonds of the county, for road and bridge purposes, did not, at the same time, fix a day for the registration of persons who resided, in Princeton, entitled to vote thereat, whose names had not been recorded on the registration books for that year, and did not publish the fact of the registration provided for, as the time and place of holding the special registration was required to be published, as provided by section 1495, Kentucky Statutes, but, instead of having made the order for the registration on July 21st, the day upon which the order to hold the election was made, on the 28th day of July, thereafter, make an order providing for the special registration, but, the order was not entered of record, nor lodged for record, in the office of the clerk of the county court nor was it delivered to the sheriff.   The pleading does not advise us, whether a registration was actually had, or was not had, nor whether the voters, who resided in the city of Princeton, participated or did not participate in the election; nor whether they voted or were denied the right to vote, at the election, on account of the alleged irregularities, of the registration, if the registration was had; or whether, they were all, or any of them, denied the right to vote, because of the fact, that no opportunity was given them to register, as voters. The number of persons who resided in Princeton, who were qualified to vote, at the election, if registered, is not alleged in the pleading, nor does it undertake to say, how many of such persons voted at the election, if any of them voted; or if denied, the right to vote, how many of them offered to vote and were denied the privilege.   Neither does the pleading show how many voters in the county cast their votes, in favor of the issuing of the bonds, nor the number, who voted against the issuing of the bonds.   Upon this subject, the only informa-

tion conveyed by the petition is that the majority for the issual of the bonds, was 286, and the averment of the petition, that a majority of the legal votes cast, were cast in favor of giving the fiscal court, the authority to issue and sell the bonds. There is an absence from the petition of any averment, to the effect, that the alleged irregularities in ordering the registration, had any effect upon the result of the election, in one way or the other. The essential thing to determine, concerning an election lawfully held, is whether the result as certified by the election commissioners speaks the will of the electorate, and an election should always be allowed to stand, if there is a fair and practical way of determining that the result of the election spoke the will of those legally participating or legally entitled and desirous of participation. One of the constitutional guaranties is, that elections must be "free and equal," which means, that all persons, who are entitled to participate in an election as voters, shall have an equal opportunity to do so, and shall not be denied such right, but, before a court is authorized to hold an election to be void, as not expressive of the will of the electorate, because, legal voters have been denied the right, or because illegal voters have been permitted to vote, it must appear, that such denial of legal voters to participate or the participation of the illegal voters, had such an influence upon the result of the election, as certified, that it can not be determined, that such result was the will of such number of the legal voters, as were necessary to effect such result. Hence, in many cases of contested elections, where legal voters have been denied the right to vote by fraud, bribery, violence, the acts of officers, through mistake, or the faults of the law, the election will not be set aside, unless it appears, that the number of the legal voters, who were deprived of the right to vote, when added to the votes certified for the minority, changes the result of the election; or where the number of illegal voters, who were permitted to vote, and for whom or for what they voted, can not be ascertained, is such a number, that when subtracted from the majority, the result of the election as certified, is changed. The election, under such circumstances, is held for naught, because of the impossibility of determining the will of the electorate. Banks v. Sargent, 104 Ky. 843; Scholl v. Bell, 125 Ky. 778; Harrison v. Strand, 129 Ky. 193; Ford v. Hopkins, 141 Ky.

181; Wallbrecht v. Ingram, 164 Ky. 476; Hardy v. Russell, 181 Ky. 287. The opinion in Early v. Raines, 121 Ky. 439, relied upon by appellants as announcing a contrary doctrine to that above stated, does, in fact, do so, but, the conclusion in that case, as stated in Wallbrecht v. Ingram, *supra,* has not been followed by the numerous cases decided, by the court, since its rendition. The opinion in Taylor v. Betts, 141 Ky. 138, relied upon by appellants, does not announce a contrary principle, to that, herein, declared, since, in that case, the election was declared void, because two-thirds of the voters, who participated, were not eligible to vote, and the will of the legal voters, therefore, could not be ascertained. Hence, it is unnecessary to decide whether the manner and time of ordering the registration, was such an irregularity, as to make the registration void, if the registration was held, as the pleading fails to show, that the result of the election would have been different, if the county judge had ordered the special registration at the same time, he ordered the election, or that his failure to do so, in any way, influenced the result, and the demurrer was properly sustained.

(b) To determine the soundness of the ruling of the court, in overruling the plaintiffs' demurrer, to the second paragraph of the answer, it is necessary to advert to the first paragraph of the petition, as the second paragraph of the answer was a plea in avoidance of the cause of action set out in the first paragraph of the petition. In the first paragraph of the petition, the plaintiffs alleged, that the election was void, for the reason that the county court was without authority to order the election held, on the 27th day of September, as no one had signed or lodged a petition with the county judge, requesting an election to be held on the 27th day of September, but, the petition, which was filed with the judge of the county court requested the election to be held upon the 30th day of September, and the action of the judge in ordering the election held upon the 27th of September, was without authority, and did not authorize the holding of an election upon that day. The first paragraph of the answer, was a traverse, and in the second paragraph, the defendants alleged, that the petition, when received by the county judge, did not name any day upon which the election was desired to be held by the petitioners, and that before filing or ordering the filing of same in the

county court, the county judge, intending to order, the election to be held on the last Saturday, in September, and at the time, thinking that the last Saturday, in September, was the 30th day of that month, inserted, without any directions from the petitioners, the words, "September 30," as the date for holding the election; but, while preparing the order to be entered upon the order book of the county court, ordering the election, he discovered, that he was mistaken about the last Saturday in the month of September, being the 30th and was reminded, that it was the 27th, and he, accordingly prepared and had entered the order, calling the election for the 27th but before the entry of the order, caused the petition to be filed, overlooking the fact, that he had inserted the 30th day of September, in the petition, and forgetting to correct it so as to make it conform to the order calling the election, although he had intended to do so. The statute, which governs the procedure, for ordering such an election, is section 4307, Kentucky Statutes, and the portion of it, which bears upon the particular question, under consideration, here, is as follows: "Before the bonds, authorized under this act, shall be issued, the county court of the county, upon the petition of one hundred and fifty legal voters, who are freeholders of the county, shall, at the regular term thereof, after receiving said petition, make an order, on his order book, directing an election to be held in said county on some day, named in said petition, not earlier than sixty days after said application is lodged with the judge of said court, which order shall direct the sheriff of the county to advertise said election and the objects therefor, for at least thirty days next before the day thereof, in some newspaper having the largest circulation in the county and, also, by printed hand bills posted up at not less than four public places in each voting precinct in the county and at the court house."

In Denton v. Pulaski County, 170 Ky. 33, a similar question to the one raised, herein, was under consideration. In that case, the petition, as filed, did not designate or name any day for the holding of the election. It simply requested, that the election be ordered to be held, on the................day of................1915. No date for the election, was ever inserted. The county court, however, ordered the election to be held, fixing the date for it in its order. It was insisted, that the county

court was without jurisdiction to order the election held upon any day, except upon one named in the petition, and as the petition did not name any day, the county court was without authority to order the election, and hence, the election was invalid. This court held, that where the petitioners had not named the day for the election in the petition, such fact, did not deprive the county court of authority to order the election, within the time provided, and if the election was legally and properly held, the fact, that the county court had fixed the day instead of the petitioners, did not affect the validity of the election. This was in effect a holding that the provision of the statute, which provides, that the election shall be ordered to be held "on some day named in the petition" was not a mandatory requirement, but, was in its nature only directory, and a failure to comply with it strictly, if the election was otherwise legally held, did not render the election invalid. Hence, in accordance with the holding, in that case, there could be no doubt of the authority of the county court to order the election to be held upon the 27th day of September, if no date for the election had been inserted in the petition by the county judge, before he caused same to be filed in the county court, and the only question, that arises is, could the unauthorized act of the county judge, in inserting in the blanks left for the date in the petition, the words, "September 30," when the petitioners had, without suggestion, left to the discretion of the county court, the naming of the day upon which the election should be held, deprive the county court of the power to select for the day of the election a day other than that named in the petition? It is insisted for appellants, however, that the petitioners, not having named a date for the election, in their petition, when same was lodged with the county judge to be filed, that he was invested with authority, as the agent of the petitioners to insert a date for the election, and that when the petition was filed, the naming of the date in the petition became the act of the petitioners, and the county court had no authority to name another day for the election. Conceding, for the time being, that the insertion of the 30th day of September, as the day for the election, was the act of the petitioners and inserted by authority from them, did the act of the county court, after the petition was filed, in ordering the election to be held upon the 27th instead of the 30th, render

the election invalid? In other words, does a county court, after such petition is filed, which names a day for the election, have the authority to disregard the day named and select another, within the limits prescribed by the statute? A conclusion, in regard to this question, would necessarily depend upon, whether the direction to order the election to be held "on some day named, in the petition," was mandatory or merely directory, and this depends of course, upon the legislative intention to be gathered from all the provisions of the statute, its nature, object, and the result of holding the provision to be mandatory or directory being considered. In Denton v. Pulaski County, *supra,* it was said, that the purpose of the legislature, was to give the petitioners the right to name a day for the election, in the petition, if they chose to do so, and upon their failure to do so, the court had authority to fix the date, but, the question as to whether the court might fix a day, other than the one named in the petition, without rendering the election invalid, was not before us for decision. The prerequisite necessary to give the county court jurisdiction, as required by the statute, is, that the petition must be subscribed by one hundred and fifty legal voters, who are freeholders, but, the naming of a day for the election, in the petition, is not a jurisdictional fact. Denton v. Pulaski County, *supra.* The petitioners are not required to do so. The use of the word, "shall" in a statute with reference to some requirement, is usually indicative that the provision is mandatory, but, it will not be so held, if the legislative intention appears otherwise. An essential thing to the validity of an election held under the statute, *supra,* is that the petition shall be subscribed by one hundred and fifty legal voters, who are freeholders, and that the order be made at a regular term of the county court, and these are mandatory, because they are prerequisites to jurisdiction to order the election. It is likewise essential to the validity of such an election, that it be not held earlier than sixty days, after the application is made, and that it be advertised for thirty days, theretofore, in order to give notice, to the persons affected by such an election of the time and place of its holding, and the time and opportunity to consider their interests, in connection with it, and their duty, in reference to it, in the protection and advancement of their rights and interests. These provisions are, without

doubt, mandatory, and, unless strictly complied with, would render the election without effect. The provision providing, that the election be ordered to be held "on some day named in the petition," could only be a provision for orderly procedure. After deferring the election to the time required after the application, and after thirty days' notice having been given of the election, it would seem to be immaterial, whether the election was held upon a day in one week or a day in the next week. The burden of taxation, imposed by it, would be the same and the results, beneficial or otherwise, would be the same, whether the election was held upon one day or another. To construe the statute as mandatory, with regard to fixing the date of the election, "on some day named, in the petition," would be to give absolute control of that matter to the petitioners, who might have a reason peculiar to themselves for naming a certain day, and take away from the county court, whose act is representative of all its citizens, and for the protection of the interests of all, any discretion in regard to it. The language of the statute, "on some day named in the petition, not earlier than sixty days after said application," evidently indicates a discretion intended to be vested in the county court. Hence, we conclude, that the direction in the statute with regard to fixing the date for the election, except after the time required by the statute, is not mandatory, but directory, and if the election was otherwise legally held, the fact, that the county court ordered the election to be held upon a day, other than the one named in the petition, but on the third day, theretofore, did not render the election invalid, and the demurrer was properly overruled.

(c)  There is no averment made in the pleadings or proven, that the notice given by the sheriff of the time and place of the election, and the purpose for which it was held, was not published in the manner provided by law, and for the time required by law, for such elections, but, the objection made thereto, is, that the sheriff did not state, in the notice, that he would hold the election, as provided by the order of the court. The objection is highly technical and wholly without merit, as the notice conveyed, to the public, full information as to the time, and places of the election, and the purpose for which it was held, and the fact, that he had been ordered to advertise it; and it was not necessary, that the adver-

tisement should explicitly say, that the sheriff would hold the election as ordered, as the law prescribed such duty for him.

(d)    M. R. Kevil was allowed to file an intervening petition, over the objection of appellants, in which he referred to the pleadings of appellants, and adopted same, and joined in their prayer for the relief sought by them.  There was no error in this, but, if so, it is impossible to see how the appellants were, in anywise, prejudiced by it, and he is not complaining of the action of the court in dismissing his petition.

(e)    The amended petition offered by appellants and which the court did not permit to be filed, only stated with some amplification the cause of action set out in the first paragraph of the petition, but, did not allege any additional fact, which added anything to what the petition already contained and, therefore, was not improperly refused.

(f)    The action was submitted for final judgment and the judgment, appealed from, was rendered at a special term of the circuit court, held on November 29th after the institution of the action on October 21st.  The answer was filed at a regular term of the court on November 5th.  A reply was filed on November 8th, and a rejoinder on November 29th.  The action was submitted for trial and final judgment, over the objection of appellants, and they now insist, that the submission and trial were prematurely had, relying upon section 367, subsection 5, of the Civil Code, which provides, as follows: ''Suits in equity, shall stand for trial, at the first term of court, after the issue shall be completed, or by the provisions of this act shall have been · completed thirty days before the commencement of the term.''

Under section 364, Civil Code, which formerly controlled the time, at which an equitable action stood for trial, and which provided that an equitable action stood for trial at any term, if the pleadings, had been, or according to the provisions of the Code, then in force, should have been completed sixty days before the commencement of the term, it was held in Hazelwood v. Webster, 25 R. 1388, that the section applied only to cases in which an issue of fact was made by the pleadings, and if the issue was one of law, the provisions of the section did not apply, and under section 366, Civil Code,

which dealt with the condition, when the plaintiff in an equitable action could demand a trial, it was held, that where an issue of fact was made by the answer, the action did not stand for trial until sixty days had expired from the completion of the pleadings, or from the time, they should have been completed, unless the plaintiff would consent, that the averments of the answer should be considered, as true. Board of Counsel v. Brislan, 31 R. 867; Gruel v. Smalley, 1 Duv. 358; Mayfield Water Light Co. v. Graves County Banking & Trust Co., 170 Ky. 56. The same rule was applied to section 367, subsection 5, in Jones v. Hazard Dean Coal Co., 169 Ky. 588. The reason for the provision of the Code, *supra,* is, that, when an issue of fact shall have been made by the pleadings, the parties may have an opportunity to prepare and file their evidence, which, in an equitable action, must, without agreement to the contrary, be done by way of depositions. If there is no issue of fact, the provision does not have application. In the instant case, the pleadings had not been, without fault on the part of appellants, completed thirty days before the trial, and if an issue of fact had been made by the pleadings, which could have influenced the judgment, the submission and trial, over the objection of appellants, would have been an error, and fatal to the judgment. However, the only issue of fact made by the pleadings, is whether the petition, when filed in the county court, named the 30th day of September, as the day upon which it was desired, that the election should be held, and was named therein by the petitioners, or by their direction; or whether such date for the election was not put in the petition by the petitioners or by their direction, but, was inserted by the county judge, without directions from the petitioners. As, heretofore, shown, whether the truth of the fact was the one way or the other, the validity of the election was not affected, and, hence, if the appellants had fully proven, the fact to be as contended by them, it would have availed them nothing, and hence, was, in reality, no issue at all. Section 756, of the Civil Code, provides that: "Nor shall a judgment be reversed or modified, except for an error to the prejudice of the substantial rights of the party complaining thereof; . . ." The principle enunciated by the above section, has been upheld by this court, in numerous decisions.

(g)  In view of the conclusions arrived at, it is unnecessary to discuss the alleged error, in overruling exceptions to the deposition of the county judge.

The judgment is therefore affirmed.